UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN DEATON and the DEATON LAW : 
FIRM, : 
       Plaintiffs, : 
 : 
v. :    C.A. No. 22-187WES
 : 
STEVEN JOHNSON, BLAKE NORVELL, : 
and JENNIFER ANDREWS, Individually : 
and LAW OFFICES OF STEVEN M. : 
JOHNSON, P.C., d/b/a JOHNSON LAW FIRM, : 
       Defendants. : 

## MEMORANDUM AND ORDER
### TRANSFERRING VENUE TO NORTHERN DISTRICT OF TEXAS

Patricia A. Sullivan, United States Magistrate Judge.

In this case, Plaintiffs John Deaton and his law firm (the Deaton Law Firm) (collectively

"Deaton") have launched a new chapter[1] of his messy fight with a Texas attorney, Steven

---

[1] As of this writing, the following are the published decisions (most only online) dealing with the Deaton/JLF battle issued by the First Circuit, Fifth Circuit, state and federal trial courts in Rhode Island and state and federal trial and appellate courts in Texas: Patton v. Johnson, Civil Action No. 4:19-cv-00698-O, 2022 WL 3012537 (N.D. Tex. June 23, 2022) (entering final judgment on Patton arbitration award); Deaton v. Johnson, C.A. No. 20-78WES, 2020 WL 4673834 (D.R.I. Aug. 12, 2020) (Deaton motion to disburse remanded to Rhode Island Superior Court); Patton v. Johnson, Civil Action No. 4:19-cv-00698-O, 2019 WL 13201898 (N.D. Tex. Dec. 20, 2019) (Patton matter ordered to binding arbitration in Texas); Patton v. Johnson, C.A. No. 17-259WES, 2019 WL 4193412 (D.R.I. Sept. 4, 2019) (Patton matter transferred to N.D. Tex.); Patton v. Johnson, C.A. No. 17-259WES, 2018 WL 3655785 (D.R.I. Aug. 2, 2018) (motion to compel Patton arbitration denied), aff'd, 915 F.3d 827 (1st Cir. 2019); Johnson v. Patton, Civil Action No. 3:17-CV-1924-M, 2018 WL 10323034 (N.D. Tex. Feb. 22, 2018) (Barry Johnson motion to compel Patton arbitration denied), aff'd, 740 F. App'x 90 (5th Cir. 2018); Patton v. Johnson, No. 05-19-00314-CV, 2019 WL 5541255 (Tex. App. Oct. 28, 2019) (appeal of Patton order to arbitrate dismissed), vacated and superseded, 2020 WL 1303278 (Tex. App. Mar. 19, 2020) (appeal dismissed); Deaton v. Moreno, No. 02-16-00188-CV, 2017 WL 4683940 (Tex. App. Oct. 19, 2017) (in Moreno matter, Deaton is subject to personal jurisdiction in Texas and bound by enforceable forum selection of Texas); Deaton v. Johnson, No. 05-16-01221-CV, 2017 WL 2991939 (Tex. App. July 14, 2017) (in Patton matter, Deaton is subject to personal jurisdiction in Texas and bound by enforceable forum selection of Texas), review dismissed (Tex. App. Aug. 10, 2018); In Re: All Individual Kugel Mesh Cases, No. PC-2008-9999, 2020 WL 13587862 (R.I. Super. Ct. Nov. 10, 2022) (stay of Patton motion to disburse pending arbitration granted); In Re: All Individual Kugel Mesh Cases, No. PC-2008-9999, 2020 WL 6335955 (R.I. Super. Ct. Oct. 22, 2020) (stay of Deaton motion to disburse denied), appeal pending sub nom. In Re: Kugel Patch, Case No. SU-2020-0285-A (R.I.). In addition, there are two arbitration decisions addressing the merits of various claims that the parties included in the record of these proceedings: Johnson v. Moreno, Final Award, JAMS Ref. No. 1310023937 (Mar. 29, 2022) (ECF No. 21-2), arb. award aff'd sub nom. Moreno v. Deaton, Cause No. 048-283747-16 (Tex. Dist. Ct. July 5, 2022) (ECF No. 21-3), notice of appeal filed, (Tex. Dist. Ct. Aug.4, 2022) (ECF No. 21-23); Patton v. Johnson, Final Award, JAMS Ref. No.

Johnson, and his law firm (Law Offices of Steven M. Johnson P.C., d/b/a the Johnson Law Firm) (collectively "JLF") over the sharing of the attorney's fees generated through the settlement of more than a hundred Kugel Mesh claims.  Much of Deaton's new complaint restates claims against JLF that have already been arbitrated to conclusion in Texas (with an appeal from one of the two awards now pending in a Texas appellate court).  In addition, he has added a potentially new claim of conspiracy against JLF.  He has also added two new defendants – Texas attorneys, Blake Norvell ("Norvell") and Jennifer Andrews ("Andrews"), who acted respectively as counsel for a Kugel Mesh claimant and counsel for JLF in one of the underlying Texas proceedings. Deaton accuses them of conspiracy with JLF and tortious interference with his referral agreements with JLF.

Now pending before the Court are three motions.

First is JLF's motion (ECF No. 21) pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of Texas, Forth Worth Division.  While asserting the affirmative defense of lack of personal jurisdiction, ECF No. 16 at 18, JLF has moved to transfer the entire case based on the interests of justice because Fort Worth in Tarrant County, Texas, is the venue selected in the underlying representation agreements and those venue selection clauses have been found to be enforceable and binding on Deaton.  Deaton, 2017 WL 4683940, at *4-5; Deaton, 2017 WL 2991939, at *1-4.  JLF further argues that the Northern District of Texas is the venue where this case could have been brought and that it is more convenient in that it is where virtually all of the events in issue occurred, virtually all witnesses (except Deaton) are located and all Defendants are present.  Deaton counters (implausibly) that Presiding Justice Alice

---

1310024255 (Aug. 13, 2021) (ECF No. 21-25), arb. award aff'd, Civil Action No. 4:19-cv-00698-O, 2022 WL 3012537 (N.D. Tex. June 23, 2022).

Gibney of the Rhode Island Superior Court is also a witness, that the out of state witnesses could testify remotely and that JLF is contractually bound to litigate these disputes in the Rhode Island Superior Court by the terms of the Kugel Mesh settlement agreement, despite that court's recent ruling to the contrary.  In re: All Individual Kugel Mesh Cases, No. PC-2008-9999, 2022[2] WL 13587862, at *15-16 & *16 n.11 (R.I. Super. Ct. Nov. 10, 2022) (Kugel Mesh settlement agreement's venue selection covers only disputes over substance of settlement agreement).

Also pending are two motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction filed by Defendants Norvell and Andrews.  ECF Nos. 8, 20.  Both have supported their motions with unrebutted affidavits averring to their utter lack of contact with and the absence of purposeful conduct directed towards Rhode Island, with the arguable exception that Norvell once arranged for Deaton to be served in Rhode Island.  ECF Nos. 8-2; 20-2; 29 at 5.  In response, Deaton relies principally on the contention that his conspiracy allegations are sufficient to support specific personal jurisdiction.  In their affidavits, both Andrews and Norvell aver that they are present in Texas; they do not dispute that they would be amenable to personal jurisdiction in the Northern District of Texas or that the Northern District of Texas would be a convenient forum to litigate this case.  See ECF Nos. 8-2 ¶ 7; 8-1 at 10; 20-2 ¶ 4.  Instead, acknowledging that this Court may order a 28 U.S.C. § 1404(a) transfer without addressing whether they are subject to personal jurisdiction here, they contend that the interest of justice requires that the Court dismiss them from the case before ordering transfer because Deaton's claims against them are so plainly lacking in merit as to be frivolous and because Deaton so

---

[2] In what appears to be a clear error committed by Westlaw, the on-line citation to this Superior Court decision is "20**20** WL 13587862," instead of the actual year of issuance, 2022.  In LEXIS, the decision is correctly reported as In re All Individual Kugel Mesh Cases, No. PC-2008-9999, 2022 R.I. Super. LEXIS 81 (R.I. Super. Ct. Nov. 10, 2022).  I have used the Westlaw citation, but with the correct year, although an on-line search must use the wrong year (2020) to locate this decision.

obviously lacked a reasonable good faith belief in the existence of personal jurisdiction when he named them.[3]

## I.    Procedural Background[4]

### A.    Rhode Island Proceedings.

Beginning approximately in 2008, JLF began filing cases on behalf of claimants alleging injury caused by defective Kugel Mesh implants against the Rhode Island manufacturer in Rhode Island and elsewhere.  Deaton, 2020 WL 4673834, at *1.  The cases that landed in federal court were transferred to the District of Rhode Island as part of a centralized multi-district litigation proceeding, In re Kugel Mesh Hernia Patch Prods. Liab. Litig., MDL Docket 07-1842WES (D.R.I.), while the cases filed in the Rhode Island Superior Court were assigned to Presiding Justice Gibney, In re: All Individual Kugel Mesh Cases, No. PC-2008-9999 (R.I. Super. Ct.).  JLF, as a Fort Worth, Texas firm in the Northern District of Texas, entered into an Attorney Representation Agreement ("ARA") with each client; these ARAs specify that they were entered into in Tarrant County, Texas, which "shall also be the place of performance and payment," that they "shall be construed in accordance" with Texas law and that any dispute arising from their interpretation, performance or breach "shall be resolved by final and binding arbitration

---

[3] In the conclusion to his opposition to the jurisdictional motions to dismiss, Deaton threw in a vague and generic argument that dismissal is premature because discovery might uncover facts to support jurisdiction.  ECF Nos. 11 at 40; 29 at 22.  Contrary to the requirements of DRI LR Cv 7(a), Deaton did not make a motion requesting jurisdictional discovery or otherwise follow up on seeking such discovery.  During the hearing, he did not contend that jurisdictional discovery should have been or should be permitted.  With no request, the Court did not order jurisdictional discovery.  I note that, if Deaton had made such a request, it is hard to speculate how he could have "present[ed] facts to the court which show why jurisdiction would be found if discovery were permitted."  Lewis v. Kennebec Cnty., No. 1:16-cv-00559-JAW, 2018 WL 4293365, at *4 (D. Me. Sept. 10, 2018) (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001)).  What matters is that he never made the request.

[4] In a decision that issued in 2020, this Court summarized the "procedural motley" of that date bearing on the Deaton/JLF battle.  Deaton, 2020 WL 4673834, at *1 n.4 (internal quotation marks omitted).  Since 2020, more decisions have issued bringing the story up to date.  For the most useful of these, I direct the reader to the Rhode Island Superior Court's thoughtful and exhaustive November 10, 2022, decision; it is an excellent source of the relevant background.  In re: All Individual Kugel Mesh Cases, 2022 WL 13587862.

conducted in Fort Worth, Texas and administered by . . . JAMS." Patton, 2019 WL 4193412, at

*1; In re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *1-2.  In connection with

some of ARAs, JLF engaged Deaton as a Rhode Island attorney to act as local counsel for JLF;

for one case filed in federal court (by Plaintiff Rickie Patton), JLF engaged Deaton as trial

counsel for the engagement memorialized in the Patton ARA.  In re: All Individual Kugel Mesh

Cases, 2022 WL 13587862, at *1; ECF No. 21-14 at 7 (general Referral Agreement between

Deaton and JLF); ECF No. 21-14 at 9 (Patton Referral Agreement between Deaton and JLF).

At some point prior to 2016, as the settlement of all of JLF's Rhode Island Kugel Mesh

cases neared culmination through a Master Settlement Agreement ("MSA") calling for the

creation by the Superior Court of a "Qualified Settlement Fund" ("QSF"), the working

relationship between Deaton and JLF unraveled, ultimately descending into open hostility.  The

MSA requires that the venue for all disputes related to the settlement agreement is "the Superior

Court of Rhode Island," as well as that all counsel (including JLF and Deaton) agree to submit to

"personal jurisdiction of the Superior Court of Rhode Island." Deaton, 2020 WL 4673834, at *1-

3 (internal quotation marks omitted); In Re: All Individual Kugel Mesh Cases, 2020 WL

6335955, at *1-2 (internal quotation marks omitted).  By Order entered on March 11, 2016, the

Superior Court created the QSF for payment of Kugel Mesh claims, liens, expenses and

attorney's fees, including to Deaton and JLF.  In Re: All Individual Kugel Mesh Cases, 2022 WL

13587862, at *2, 15.  To implement the settlement without resolving the "full-blown dispute

over Deaton's entitlement to attorney's fees," the Superior Court "[a]cknowledg[ed] the work by

Attorney Deaton witnessed by this Court and performed relative to the mediation overseen by

this Court" and included in the QSF Order the proviso "that $1 million be segregated within the

QSF to be distributed only upon further order of this Court."  Id. at *2 (internal quotation marks omitted).

Now pending in the Rhode Island state courts are two motions to disburse from the QSF, collectively referred to as the "QSF proceedings."

*QSF Proceedings/Deaton Motion to Disburse*.  First is Deaton's motion to disburse to him the entirety of the $1 million segregated portion of the QSF filed in Rhode Island's Superior Court on January 24, 2020.  Deaton seeks this portion of the QSF as the attorney's fees and costs that he claims are owed to him for the Kugel Mesh cases on which he was local counsel pursuant to the general Referral Agreement, for the federal-court Patton Kugel Mesh case pursuant to the Patton Referral Agreement, and for his expenditures "supporting" Patton's futile post-settlement litigation salvo against JLF.  In re All Individual Kugel Mesh Cases, 2020 WL 6335955, at *2; see ECF No. 21-25 (Final Award of arbitrator), Patton, 2022 WL 3012537 (entering final judgment on Patton arbitration award rejecting all of Patton's claims).  JLF vigorously opposed this motion not only on the merits but also because the underlying issue (as between Deaton and JLF, who owes what to whom) was then still pending in Texas and is now on appeal brought by Deaton to a Texas state appellate court from a Texas arbitration award.[5]

The Rhode Island Superior Court denied JLF's motion to stay this motion to disburse until the conclusion of these Texas state court proceedings because "no written agreement to arbitrate exists between the parties."  In re All Individual Kugel Mesh Cases, 2020 WL 6335955, at *4-5 (stay to await arbitration not warranted).  The appropriateness of the stay denial has been pending on JLF's appeal to the Rhode Island Supreme Court since October 2020.  That appeal's

---

[5] This Texas proceeding, referred to as the "Moreno/JLF dispute," is discussed in more detail *infra*.

progress (according to the public docket) has been slowed by repeated extension motions (over twenty) filed by both Deaton and JLF.  In re Kugel Patch, Case No. SU-2020-285-A (R.I.).

       *QSF Proceedings/Patton Motion to Disburse.*  Also currently pending in the Rhode Island Superior Court is the motion of Rickie Patton (the Kugel Mesh claimant for whom Deaton was engaged by JLF to act as trial counsel) to disburse his allocated portion from the QSF filed on May 2, 2022.  This motion was filed by Deaton acting as Patton's counsel; the QSF administrator made a proposal for disbursement that was opposed by both Deaton and JLF.  In Re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *7.

       On November 10, 2022, the Superior Court stayed further proceedings on this motion pending binding arbitration in Texas of Patton's contention (asserted by Deaton) that JLF is not entitled to any attorney's fees from Patton's allocated portion of the QSF.[6]  Id. at *16-17.  The decision finds that Patton is collaterally estopped from relitigating the enforceability of the arbitration agreement in his ARA with JLF and holds that the MSA's forum selection clause mandating venue in the Rhode Island Superior Court does not encompass litigation of the dispute between Patton and JLF over attorney's fees and costs.  Id. at *15-16.  It makes clear that the Superior Court's "retention of continuing jurisdiction over the QSF, which was established in part to 'ensure that all common benefit fund expenses, medical liens, other appropriate expenses, legal fees and costs were paid, and that net proceeds would be distributed to Kugel Mesh claimants who chose to participate in the settlement[,]' did not thereby bind all claimants and

---

[6] This Texas arbitration proceeding, referred to as the "Patton dispute" is discussed in more detail *infra*.  Although Final Judgment has entered, Patton, 2022 WL 3012537, and no appeal has been taken, the Rhode Island Superior Court found that this arbitration is "ongoing" in that JLF's fee has not been resolved, In Re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *15, possibly based on the arbitrator's finding rejecting Patton's contention that JLF had waived or forfeited its fee, but also finding that JLF's contingent fee on Patton's net recovery in his Kugel Mesh case would not be due (and Patton not in breach of the ARA) until the QSF administrator issues its final determination of deductible court costs and expenses and Patton receives the net disbursement from which he will owe JLF its fee.  ECF No. 21-25 at 31-32.

their attorneys . . . to resolve all disputes underlying the proper calculation of their 'legal fees and costs' through *de novo* hearings or mini-trials before this Court." Id. at *15 (quoting Deaton, 2020 WL 4673834, at *3).  This decision confirms that litigation of disputes (including those impacting the allocation of attorney's fees and expenses from the QSF) that are governed by the ARA clauses requiring binding arbitration in Texas must be conducted in Texas and that the venue selection clause in the MSA does not apply to such disputes because it is limited to "any dispute over the substance of the Settlement Agreement." In Re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *15-16 & *16 n.11.

      B.      Texas Proceedings

*Moreno/JLF Dispute*.  Now pending in the Texas state courts is what I am calling the Moreno/JLF dispute.  This dispute has evolved into a final arbitration award resolving all claims (including fraud and breach of contract) between Deaton and JLF based on an arbitration conducted through JAMS by a retired Texas state court judge, the Honorable Mark Whittington. https://www.jamsadr.com/whittington/.

The Moreno/JLF dispute began in 2015 with a complaint filed by Defendant Norvell, on behalf of Margaret Moreno, a former Kugel Mesh client of JLF and Deaton as local counsel, in the federal court in the Northern District of Texas; Moreno alleged malpractice by JLF, which was represented by Defendant Andrews.  ECF Nos. 31-27; 31 at 7-8.  This litigation ended with an Order compelling binding arbitration.  ECF No. 31-27 at 14.  Still represented by Defendant Norvell, Moreno filed her second action on February 10, 2016, in state court – the District Court of Tarrant County, Texas – alleging malpractice and other misconduct by both JLF and Deaton and asking for the matter to be referred to binding arbitration pursuant to the ARA.  ECF No. 21-9.  Again, Defendant Andrews entered to represent JLF.  Deaton was served with this complaint

8

in Rhode Island on March 11, 2016, by a Rhode Island constable; Defendant Norvell is named on the summons as the responsible attorney.  ECF No. 31-29.

Deaton's early attempts to avoid litigating against Moreno in Texas state court were unsuccessful.  Deaton, 2017 WL 4683940, at *5 (holding ARA consent to Texas jurisdiction and ARA forum-selection clause enforceable against Deaton).  After the Texas state court granted a motion to compel arbitration based on the Moreno ARA, ECF No. 21-1, Deaton and JLF cross claimed against each other, each alleging that the other had breached contractual duties, committed fraud and tortious interference and engaged in other wrongful conduct.  For reasons that Deaton finds suspicious,[7] Moreno was dropped from the suit and the matter continued as a binding arbitration proceeding to resolve all claims between Deaton and JLF by Justice Whittington.  Despite the Rhode Island Superior Court's ruling on October 22, 2020, that Deaton was not party to an agreement to arbitrate his disputes with JLF over attorney's fee allocation, In Re: All Individual Kugel Mesh Cases, 2020 WL 6335955, at *4-5, Deaton's motion to dismiss, abate or stay this arbitration was denied and the arbitration proceeded.  EFC No. 21-21.

Based on evidence presented during six hearing days in 2021 and 2022, Justice Whittington issued his decision as a Final Award on March 29, 2022.  ECF No. 21-2.  In it, he made the following significant finding:

> [I]t must be noted this is an extraordinary dispute between two attorneys that exceeds all bounds of reasonable behavior.  Both sides have engaged in unprofessional conduct and their actions have benefited neither themselves nor their clients.  Just as inexplicably, they have each spent well over a million dollars in fees and expenses over a claim that, at its best, does not exceed $400,000.[8]

---

[7] The complaint alleges that Norvell filed a notice of non-suit without prejudice on June 10, 2019, dropping Moreno's claims against Deaton and JLF.  ECF No. 1-1 ¶ 105; see ECF No. 29-18.  Deaton argues that this action is inexplicable except as part of the conspiracy among JLF, Norvell and Andrews to void his contractual rights to Kugel Mesh attorney's fees.  The plausibility (or lack of plausibility) of this allegation is not before me.

[8] While my involvement with the Deaton/JLF dispute has not been as extensive as Justice Whittington's, particularly because he presided over a multi-day evidentiary hearing, based on my own observations in the three pertinent matters that have come before me, I have seen nothing that would cause me to disagree with these harsh sentiments.

ECF No. 21-2 at 12-13.  Ultimately, Justice Whittington found that Deaton was entitled to recover $135,000 from JLF in quantum meruit for services rendered, but that otherwise all of their claims against each other, including fraud, tortious interference and breach of contract, are without merit.  Id. at 13-24.  His lengthy and detailed decision ends with the conclusion that, "[t]his Final Award resolves all claims between the parties submitted for decision in this arbitration proceeding and all relief requested but not granted is denied."  Id. at 24.  The decision applies "Texas law . . . to this case."  Id. at 21.  On July 5, 2022, the Tarrant County, Texas, District Court entered Final Judgment on Justice Whittington's Final Award.  ECF No. 21-3.  Deaton's appeal of this decision is pending before the Second Court of Appeals of Fort Worth, Texas.  ECF No. 21-23.

_Patton Dispute_.  Formerly pending in Texas is what I am calling the Patton dispute.  This battle between Patton and JLF (on Patton's side seemingly brought, and/or financed and/or maintained by Deaton) has raged for some time in Texas state courts, in Texas-based arbitration proceedings and in the United States District Court for the Northern District of Texas.  Despite the initial filing in Rhode Island Superior Court, following removal and because "virtually all of the events and omissions . . . occurred in the Northern District of Texas," this Court transferred the Patton dispute to the Northern District of Texas, Patton, 2019 WL 4193412, at * 5, where Patton was repeatedly ordered to binding arbitration pursuant to the ARA.[9]  Patton v. Johnson,

---

[9] The United States District Court for the Northern District of Texas based this determination not on the merits, but rather on Patton's procedural failure to oppose the motion to compel arbitration; Patton, 2020 WL 13504980, at *1, thus, the order compelling arbitration is not clearly inconsistent with this Court's determination on the merits, which was affirmed by the First Circuit, holding that the finding of the initial arbitrator that Patton had not agreed to his ARA's arbitration clause was binding on the parties.  Patton v. Johnson, 915 F.3d 827, 838 (1st Cir. 2019) ("denial of the appellant's motion to compel arbitration must stand").  In her November 10, 2022, decision granting the stay of proceedings on the Patton motion to disburse, Justice Gibney wisely noted that there are reasons why one could question whether the contrary decision of the Northern District of Texas, Patton, 2020 WL 13504980, at *3 ("this dispute shall proceed to arbitration"), is correct, but concluded that it is "not binding because it is correct; it is

10

No. 4:19-cv-00698-O, 2020 WL 13504980, at *3 (N.D. Tex. Mar. 9, 2020) ("this dispute shall

proceed to arbitration"); Patton, 2019 WL 13201898, at *3 ("Court REFERS the parties' dispute

to arbitration"); Patton, 2020 WL 1303278, at *2 (dismissal of appeal from order to arbitrate for

want of jurisdiction).

The Patton JAMS arbitration was litigated before a retired Texas state judge, the

Honorable Justice Michael Massengale.  ECF No. 21-25 at 3-4; jamsadr.com/massengale.

Justice Massengale defined the scope of the arbitration:

> [A]ll claims against and between Defendants STEVEN M. JOHNSON,
> Individually and LAW OFFICES OF STEVEN M. JOHNSON, P.C., d/b/a THE
> JOHNSON LAW FIRM and Defendant RICKIE PATTON are ordered to binding
> arbitration [and] any dispute arising from interpretation, performance, or breach
> of this Fee Agreement, including any claim of legal malpractice. . . shall be
> resolved by final and binding arbitration . . . administered by . . . JAMS.

Id. at 2 (internal quotation marks omitted).  Following eight hearing days in 2021, on August 13,

2021, Justice Massengale issued a lengthy and detailed Final Award in which he applied Texas

law and rejected every claim that Patton had asserted against JLF and its attorneys; JLF's claims

against Patton for its contingent fee were dismissed without prejudice as unripe.[10]  ECF No. 21-

25.  On cross motions of Patton and JLF, the federal court in the Northern District of Texas

affirmed the arbitrator's award and entered Final Judgment in the case.  Patton, 2022 WL

3012537, at *2.  Neither party has appealed from this Final Judgment.

## II.     Deaton's Allegations in Pending Complaint

---

binding because it is last"; based on this conclusion, she ordered Patton's motion for disbursal from the QSF stayed
until the completion of the arbitration of all issues between Patton and JLF.  In Re: All Individual Kugel Mesh
Cases, 2022 WL 13587862, at *16-17.

[10] See n.6 supra.

Deaton filed the instant case in Rhode Island state court; it was removed to this Court on May 10, 2022.  His complaint (with exhibits some 330 pages) is an amalgamation of the factual allegations that he has previously asserted in connection with the ongoing QSF dispute in Rhode Island state courts and the Moreno/JLF and Patton disputes in the Texas state and federal courts, with a new twist.

The first two Counts (Counts I and II) are against JLF and replicate the fraud/breach of contract and other claims resolved by Justice Whittington's Final Award in the arbitration of the Moreno/JLF dispute, as to which a Texas state court appeal is pending.  The complaint also contains factual allegations that replicate those made in Patton v. Johnson, transferred by this Court to the Northern District of Texas in 2019, 2019 WL 4193412, at *5, as to which that court has entered Final Judgment.  Patton, 2022 WL 3012537; but see n.6 *supra*.  In Counts III and IV, Deaton introduces the twist, marshalling the now-familiar facts to assert claims against not just JLF, but also against two new defendants, accusing JLF, Norvell and Andrews (the attorneys of record for Moreno and JLF respectively in the Moreno/JLF dispute that culminated in Justice Whittington's Final Award) of tortious interference and conspiracy with JLF through strategic machinations during travel of the Moreno/JLF dispute for the purpose of voiding JLF's obligation to share attorney's fees with Deaton pursuant to the general Referral Agreement and the Patton Referral Agreement.  Whether these conspiracy/tortious interference claims are barred in whole or in part by collateral estoppel or claim preclusion, state a cause of action that is recognized under applicable law or are sufficiently plausible to clear the Twombly/Iqbal bar is beyond the scope of this decision.

## III.     Personal Jurisdictional Facts

Defendants Norvell and Andrews have filed affidavits averring that neither has ever had any contact with Rhode Island; Andrews was physically present in Rhode Island once when a plane she was on landed at a Rhode Island airport as she was traveling elsewhere; Norvell has never been present in Rhode Island. ECF Nos. 8-2, 20-2. Both further aver that all of their conduct in issue occurred entirely in Texas in that they are accused of conspiring with a Texas attorney to file/defend Texas litigation, all of which was done in Texas. JLF asks the Court to consider that it also has asserted the affirmative defense of lack of personal jurisdiction but has presented no facts or argument to support this claim; instead, it has asked for transfer with personal jurisdiction undecided.

While not disputing any of the facts stated in the Andrews/Norvell affidavits, Deaton counters with facts that he claims support his argument that this Court may exercise specific personal jurisdiction over them. As to Norvell, Deaton alleges that Norvell arranged to have Deaton served with the Moreno complaint in Rhode Island by a Rhode Island constable; Deaton claims this complaint was part of the fraudulent ruse to avoid Justice Gibney's continuing jurisdiction pursuant to the MSA. As to Andrews, Deaton argues that, while in her Texas office as part of her work in defending JLF in the Texas proceeding, she reviewed documents from the Rhode Island Kugel Mesh case and communicated with JLF, Norvell, and Patton about Deaton and matters related to the Rhode Island Kugel Mesh case.

## IV.   APPLICABLE LAW

Section 1404(a) of Title 28 provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Id.  Section 1404(a) confers on the district court discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (internal quotation marks omitted).  First, however, the court must determine whether the case is one that "might have been brought in the transferee court."  In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal quotation marks omitted).  If it is, the court then looks to both private and public interest factors to determine if transfer is appropriate.  Tristar Prods., Inc. v. Novel Brands, LLC, 267 F. Supp. 3d 380, 382 (D.R.I. 2017).  Such factors include:

> (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and obstacles to a fair trial; (7) status of the court's trial calendar; and (8) familiarity of forum with applicable state law.

Id.  The moving party bears the burden of proving that a transfer is warranted.  Id.

An "overriding principle in any transfer analysis . . . is that the plaintiff's choice of forum is entitled to great weight."  Atl. Specialty Ins. Co. v. MCMC, LLC, Civil Action No. 21-cv-11194-ADB, 2022 WL 3045576, at *7 (D. Mass. Aug. 2, 2022) (internal quotation marks omitted).  However, this proposition is offset by the principle that disputes should normally be resolved in a single proceeding.  Bos. Post Partners II, LLP v. Paskett, Civil No. 15-13804-FDS, 2016 WL 3746474, at *10 (D. Mass. July 8, 2016).  Thus, a plaintiff's election to assert claims against defendants as to whom personal jurisdiction is either lacking, or at best "wafer-thin," substantially lessens the significance of this factor in the transfer calculus.  Id. at *10-12.

When personal jurisdiction over some defendants is plainly lacking, the court may transfer without deciding the issue of personal jurisdiction or may simply dismiss such defendants before transferring the case to a more appropriate venue where it could have been

brought.  Federal Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 116-119 (1st Cir.

2016), abrogated on other grounds, Lightfoot v. Cendant Mortg. Co., 580 U.S. 82 (2017); Tristar

Prods., Inc., 267 F. Supp. 3d at 382; Deaton v. Napoli, C.A. No. 17-167 S, 2017 WL 3381863, at

*5-6 (D.R.I. Aug. 4, 2017).  To determine whether to dismiss or transfer without deciding

personal jurisdiction, the Court is guided by 28 U.S.C § 1631, which provides that when a court

"finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

such action . . . to any other such court . . . in which the action or appeal could have been brought

at the time it was filed or noticed."  The First Circuit has interpreted § 1631 as establishing a

presumption in favor of transfer, rather than dismissal, when the forum court lacks personal

jurisdiction.  TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d 195, 213-14

(D. Mass. 2019) (citing Federal Home Loan Bank of Boston, 821 F.3d at 119).  This is consistent

with the Supreme Court's mandate to "authorize the transfer of cases, however wrong the

plaintiff may have been in filing his case as to venue, whether the court in which it was filed had

personal jurisdiction over the defendants or not."  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466

(1962).  Dismissal rather than transfer is appropriate only when the action against the defendant

challenging personal jurisdiction itself is fanciful or frivolous, Napoli, 2017 WL 3381863 at *5,

there was an obvious error in filing the actions in the wrong court and it is plaintiff himself who

seeks the transfer, Whittaker v. Winner, 264 F. Supp. 2d 281, 282 (D. Md. 2003), or the plaintiff

plainly lacked a reasonable good faith belief in the existence of personal jurisdiction, Beh v.

Ostergard, 657 F. Supp. 173, 179-80 (D.N.M. 1987).

## V.     ANALYSIS

In reliance on the complaint, buttressed by the sworn affidavits of Andrews and Norvell

and the declaration of Steven Johnson, JLF has easily sustained its burden of demonstrating that,

at the time it was filed in Rhode Island, this case could have been brought in the Northern

District of Texas based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, with venue based

on 28 U.S.C. § 1391(b)(1).  Specifically, Deaton has alleged that he resides in Rhode Island,

ECF No. 1-1 ¶ 5, while JLF, Norvell and Andrews all reside in Texas, ECF No. 1-1 ¶¶ 6-9, with

Steven Johnson and JLF residing in Fort Worth in Tarrant County, Texas, which is within the

Northern District.  ECF No. 21-5 ¶ 2; see txnd.uscourts.gov/court-info.  Deaton has not disputed

any of the facts foundational to this proposition nor has he otherwise sought to controvert it.

Accordingly, the Court finds that this case meets this threshold requirement for a § 1404(a)

transfer.

Next, the Court must determine what venue best meets "the interest of justice."  18

U.S.C. § 1404(a).  To make this determination, the Court must assess the significance of the

competing venue selection clauses, with JLF pointing to the ARAs, which mandate venue for

litigating all disputes arising from them in Fort Worth in Tarrant County in the Northern District

of Texas, and Deaton pointing to the MSA, whose venue clause calls for the Rhode Island

Superior Court.  The problem for Deaton is that the scope of the latter clause was directly

addressed in the recent decision of the Rhode Island Superior Court – on November 10, 2022,

Presiding Justice Gibney issued a decision holding that the MSA's venue selection clause does

not "thereby bind all claimants and their attorneys . . . to resolve all disputes underlying the

proper calculation of their 'legal fees and costs' through de novo hearings or mini-trials before

this Court."  In re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *15.  Thus,

Deaton's reliance on the MSA venue clause now falls flat.[11]  By contrast, the ARA venue

---

[11] In fairness to Deaton, the Court observes that the Superior Court's holding that clearly limits the scope of the MSA's venue selection clause did not issue until November 10, 2022.  Thus, at the time of the filing of his complaint in May 2022, as well as at the time of his filing of his opposition to JLF's motion to transfer on October 5,

selection clauses clearly cover JLF's entitlement to attorney's fees in the Kugel Mesh cases and

Deaton's core claim in this case is that JLF, Andrews and Norvell conspired to defeat his right to

share in those fees pursuant to the general Referral Agreement and the <u>Patton</u> Referral

Agreement.  State and federal courts in Texas have repeatedly held that, by entering into the

Referral Agreements, Deaton is subject to the terms of the ARAs, including venue selection.

<u>E.g.</u>, <u>Patton</u>, 2020 WL 13504980, at *1-3; <u>Patton</u>, 2020 WL 1303278, at *1-2; <u>Patton</u>, 2019 WL

13201898, at *3; <u>Deaton</u>, 2017 WL 4683940, at *5.  As to <u>Patton</u>, the Rhode Island Superior

Court has agreed.  <u>Individual Kugel Mesh Cases</u>, 2022 WL 13587862, at *15-16.  Thus,

consideration of the competing contractual venue selection clauses tips the balance decidedly in

favor of transfer to the Northern District of Texas.

      Another important factor in the interest-of-justice calculus is the reality that Andrews is

almost certainly not, and Norvell is unlikely, subject to personal jurisdiction in Rhode Island.[12]

The only arguable Rhode Island contact as to Andrews is that her legal analysis and her

conversations with persons not in or from Rhode Island about defending litigation pending in

Texas on behalf of her Texas client may sometimes have addressed the topic of Deaton or what

had happened or might happen in the Rhode Island Kugel Mesh proceedings or the QSF dispute.

Such conduct simply does not amount to an "act by which [she] purposefully avail[ed] [her]self

---

2022, Deaton could still make the good faith argument that the MSA required litigation of this case in the Rhode
Island Superior Court, where he filed it.

[12] JLF has asserted the defense of lack of personal jurisdiction, ECF No. 16 at 18, but has not moved to dismiss on
this ground.  Without deciding the issue, I observe that whether this defense is viable is questionable in light of
JLF's presence in Rhode Island in connection with the underlying Kugel Mesh proceedings, its presence to defend
two prior suits in this Court arising out of the same subject matter, as well as its ongoing appearance in the Rhode
Island state courts to oppose Deaton's motions to disburse.  And JLF is covered by the MSA's contractual
submission of all counsel to "personal jurisdiction of the Superior Court of Rhode Island."  <u>Deaton</u>, 2020 WL
4673834, at *3.  Therefore, by contrast with the robust personal jurisdiction arguments of Andrews and Norvell,
whether this Court has personal jurisdiction over JLF has not weighed heavily in my analysis.

of the privilege of conducting activities within [Rhode Island]." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (internal quotation marks omitted). The only contact for Norvell is his participation (while in Texas) in arranging for the service of the Moreno complaint on Deaton in Rhode Island. However, while certainly purposeful, this solitary contact is suspect as the foundation for personal jurisdiction over Norvell – it is better interpreted as directed not towards Rhode Island, but rather towards Texas in that Moreno's claim arose from her ARA, which included a forum selection clause requiring it to be arbitrated in Tarrant County, Texas, a clause that had been found to be binding on Deaton. See Allred v. Moore & Peterson, 117 F.3d 278, 284-85 (5th Cir. 1997) (more than mere service in the forum is required for personal jurisdiction); Miner v. Rubin & Fiorella, LLC, 242 F. Supp. 2d 1043, 1047 (D. Utah 2003) ("service, in and of itself, is an inadequate contact with the state of Utah to create specific jurisdiction in Utah"). Thus, with personal jurisdiction over two of the three defendants named in this case either non-existent or wafer thin, the interests of justice, including the important interest of avoidance of piecemeal litigation, strongly augur for transfer to the Northern District of Texas.[13] See Bos. Post Partners II, LLP, 2016 WL 3746474, at *11-12.

---

[13] Based on the force of their personal jurisdiction arguments, Andrews and Norvell ask the Court to determine the lack of personal jurisdiction and dismiss them before transfer. This request runs contrary to the "rebuttable presumption in favor of transfer" over dismissal. Deaton, 2017 WL 3381863, at *5 (internal quotation marks omitted). More importantly, this is not a case where Deaton's claims are palpably frivolous or where the absence of personal jurisdiction is so plain as to evidence bad faith. Id. at *5-6. To the contrary, as to Norvell, Deaton has one jurisdictional fact (the service of the Moreno complaint) that probably is not enough to carry the day but is enough to evade a finding of lack of good faith in seeking to sue Norvell in Rhode Island. Further, until the November 10, 2022, Rhode Island Superior Court's decision holding that the MSA's forum selection clause was not intended to cover resolution of all disputes underlying the proper calculation of attorneys "'legal fees and costs' through de novo hearings or mini-trials before this Court," In Re: All Individual Kugel Mesh Cases, 2022 WL 13587862, at *15, Deaton could argue that he was motivated by the good faith belief that litigation of this case was required to be conducted in Rhode Island Superior Court, leaving him with no choice but to name Andrews and Norvell. Thus, this is not a case where frivolousness or bad faith is so palpably plain that the presumption in favor of transfer should be set aside.

Deaton's reliance on the so-called conspiracy doctrine – pursuant to which personal jurisdiction may be obtained over out-of-state defendants based on nothing more than an allegation of conspiracy with in-state defendants – does not alter the personal jurisdiction interest-of-justice analysis.  Not only has the First Circuit never recognized the conspiracy doctrine as a stand-alone basis for personal jurisdiction, In re: TelexFree Sec. Litig., ___ F. Supp. 3d ___, Civil Action No. CV 4:14-md-02566-TSH, 2022 WL 3915989, at *18 (D. Mass. Aug. 31, 2022) ("First Circuit has not adopted [a conspiracy theory of jurisdiction] and the Court declines to do so here") (citation omitted), this theory of jurisdiction clashes with the Supreme Court's recent precedent on specific personal jurisdiction, which makes plain that the named defendant must take "some act by which [he/she] purposefully avails [him/her]self of the privilege of conducting activities within the forum State," through contacts of that defendant's own choice and not "random, isolated, or fortuitous."  Ford Motor Co., 141 S. Ct. at 1025 (internal quotation marks omitted).  Further, in this case, Deaton's alleged conspirators are all in Texas – that is, factually this is not a case where out-of-state conspirators are alleged to have conspired with in-state conspirators.

A final interest-of-justice consideration is the forum's familiarity with the law to be applied.  Pertinent to this consideration is that the ARAs call for Texas law and both of the arbitration decisions (resolving the Moreno/JLF dispute and the Patton dispute respectively) found Texas law to be applicable to all issues arising from the claims of Deaton and JLF against each other and the claims of Patton and JLF against each other.  See generally ECF Nos. 21-2, 21-25.  Further, to the extent that Deaton's claims against Andrews/Norvell are new, not controlled by the ARA forum selection clauses and not addressed in the arbitration decisions, the

applicable choice of law principles of Rhode Island[14] direct the forum to be guided by the law

with the most significant relationship to the matter in dispute.  Najarian v. Nat'l Amusements

Inc., 768 A.2d 1253, 1255 (R.I. 2001) (per curiam) (Rhode Island Supreme Court has adopted

interest weighing approach when resolving choice of law questions pursuant to which courts

"look at the particular case facts and determine therefrom the rights and liabilities of the parties

in accordance with the law of the state that bears the most significant relationship to the event

and the parties") (cleaned up); accord Longview Energy Co. v. Huff Energy Fund LP, 533

S.W.3d 866, 872 (Tex. 2017) ("Texas courts apply the law of the jurisdiction that has the most

significant relationship to the particular substantive issue to be resolved").  These choice of laws

principles clearly point to the law of Texas.  With the Northern District of Texas well

experienced with the application of Texas state law, and the District of Rhode Island lacking

such familiarity, this factor weighs decisively in favor of transfer to Northern District of Texas.

The last § 1401(a) factor for the Court's consideration is the convenience of the parties.

In that regard, it is significant that the essence of Deaton's complaint is that JLF, Andrews and

Norvell allegedly concocted a scheme to trap Deaton into resolving his disputes with JLF in

various arbitration and court proceedings in Texas instead of in the Rhode Island Superior Court

before Presiding Justice Gibney.  As alleged in the complaint, the plot was hatched by JLF,

Andrews and Norvell in Texas and was implemented entirely in Texas through the filing of the

cases connected with the Moreno/JLF dispute; the Texas-based manipulation of Moreno (a

California resident), who was used as a pawn in furtherance of this Texas conspiracy; the Texas-

---

[14] For § 1404(a) transfers, the state law governing choice of laws that is applicable in the original court also applies in the transferee court.  Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 65 (2013).  That means that Rhode Island choice of laws principles apply, resulting in the application of Texas law.  The only exception to this principle arises to the extent that the issue is controlled by the ARA forum selection clauses.  In that instance, the forum selection clause requires application of the choice of laws principles of the contractual forum, here Texas, also resulting in the application of Texas law.  See id. at 65-66.

based machinations resulting in the <u>Moreno/JLF</u> dispute proceeding in arbitration through a hearing to a Final Award issued by Justice Whittington in Texas; and the Texas-based actions of the Texas attorneys resulting in the <u>Patton</u> dispute also proceeding to arbitration, through hearing and Final Award in Texas.  Although the alleged goal of the conspirators was to prevent Deaton from litigating these issues in the Rhode Island Superior Court, Rhode Island is simply not the location where the events occurred or where the sources of proof, and the witnesses who can testify about them are located.  Nor does the Court find persuasive Deaton's argument that a civil proceeding where witness credibility will be in issue can more conveniently be conducted with all but one (Deaton) of the witnesses testifying remotely.  Thus, consideration of convenience yields a clear answer – this Court should transfer the case to the Northern District of Texas.

Balanced against these factors is Deaton's choice of Rhode Island as the forum to file this case, his presence in Rhode Island, the convenience to him of litigating in Rhode Island and the reality that someday, the Rhode Island Superior Court will finalize the allocation of the QSF among various remaining claimants, including potentially Deaton and JLF.  However, the significance of Deaton's choice of forum in Rhode Island is significantly diminished in that the lack of personal jurisdiction over Andrews and likely over Norvell is a compelling reason in favor of transferring the case to the Northern District of Texas.  <u>See</u> <u>Bos. Post Partners II, LLP</u>, 2016 WL 3746474, at *11-12.  Further, with virtually all witnesses except Deaton himself[15] located in Texas, the balance of convenience decidedly points to Texas.  <u>Patton</u>, 2019 WL 4193412, at *2-5 (with only one witness in Rhode Island (Deaton) 1404(a) transfer motion granted).  As to the Rhode Island Superior Court, its QSF allocation determination is not in issue in this case, which is laser-focused on the Texas-based conspiracy.  The Superior Court will

---

[15] The Court rejects Deaton's unsupported and frivolous contention that Rhode Island Superior Court Justice Alice Gibney's role as a witness is a reason why convenience tips to Rhode Island.

determine the QSF allocation whenever and based on whatever factors Presiding Justice Gibney deems appropriate, guided by the MSA, applicable Rhode Island law and equitable principles. Whether Deaton has been injured by a Texas-based conspiracy among JLF, Andrews and Norvell is an entirely different issue.  Thus, the ongoing QSF dispute does not tip the balance in favor of keeping this case in Rhode Island.

At bottom, Deaton has launched a conspiracy claim based on an alleged scheme that unfolded entirely in Texas and this Court lacks personal jurisdiction certainly over at least one (Andrews) and likely over a second (Norvell) of the alleged trio of conspirators.  With all of the applicable private and public interest factors, Tristar Prods., Inc., 267 F. Supp. 3d at 382, tipping decidedly towards transfer to the Northern District of Texas, Patton v. Johnson, 2019 WL 4193412, at *3, the Court finds that it is in the interest of justice and for the convenience of the parties and witnesses to transfer the case to the Northern District of Texas, so that the piecemeal litigation of these claims is avoided.  Accordingly, the Court exercises its discretion to transfer this case to the Northern District of Texas without addressing whether personal jurisdiction may be exercised in Rhode Island over Andrews, Norvell or JLF.

A closing observation – mindful that the battle between Deaton and JLF over the allocation of attorney's fees has been raging since at least 2016, with potentially parallel state court proceedings ongoing in both Texas (the Moreno/JLF dispute) and Rhode Island (the QSF dispute), the Court sua sponte asked the parties to address whether abstention pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), would be an appropriate course.  In response, the parties agreed that the Rhode Island state court proceeding is not sufficiently parallel for Colorado River abstention but disagreed about the Texas state court proceeding.  As to Rhode Island, the Court concurs with the parties and declines to order

abstention in light of the reality that Deaton's allegation that he has been injured by a Texas conspiracy is a material element of this complaint and is entirely new and not parallel with what is in issue in the Rhode Island state court proceeding.  This Court expresses no view whether or how the Northern District of Texas should address abstention if the issue is raised following transfer.

## VI.    CONCLUSION

Based on the foregoing, the Court grants[16] JLF's motion (ECF No. 21) seeking to transfer venue of this case to the Northern District of Texas, Fort Worth Division, because the Court determines that transferring is in the interest of justice and best serves the convenience of the parties pursuant to 28 U.S.C. § 1404(a); this transfer is ordered without deciding the issues of personal jurisdiction over JLF, Andrews and Norvell; therefore, the motions to dismiss for lack of personal jurisdiction (ECF Nos. 8, 20) are neither granted nor denied.  For administrative convenience, the Court directs the Clerk's Office to terminate these motions, to be refiled in the Northern District of Texas if the movants deem appropriate.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 26, 2023

---

[16] A motion to transfer venue is nondispositive and a magistrate judge may make the determination pursuant to 28 U.S.C. § 636(b)(1)(A).  McEvily v. Sunbeam-Oster Co. Inc., 878 F. Supp. 337, 340 (D.R.I. 1994).  Because I have opted not to address the Norvell/Andrews dispositive motions, despite a referral that asked me to issue a report and recommendation, this decision is issued as a memorandum and order.  See Patton, 915 F.3d at 832 (for non-dispositive motion, "an order, not a recommended decision, would have been the appropriate vehicle for the magistrate judge's findings and conclusions").